OPINION
{¶ 1} Defendant-appellant John Conny appeals the decision of the Columbiana County Common Pleas Court rendered in favor of intervenor-appellee State Farm Mutual Automobile Insurance Company. The main issue is whether a vehicle lessee is still the owner of a car for purposes of whether lessee's insurance policy still covers the car where: the dealer agreed to help lessee engage in early termination of the lease; lessee dropped the car off at the dealer; dealer allowed defendant-appellant to test drive car; defendant-appellant wrecked car, injuring plaintiff George Moser; and lessor had not given consent nor received pay off. Other issues presented concern the manner of test driving with regards to the scope of permission and the effect of a clause that excludes coverage where the car is being used by a person engaged in the car business. For the following reasons, the decision of the trial court on the main issue is reversed, and this case is remanded to make decisions concerning the other two issues.
 STATEMENT OF FACTS {¶ 2} In January 1998, Filnor, Inc. leased a 1997 Corvette through Lavery Chevrolet-Buick, Inc. in Alliance, Ohio for a two year term. The financing was provided by National City Bank, the lessor. Filnor was insured by State Farm. Soon thereafter, Filnor asked Lavery if it could help terminate the lease, but Lavery declined to assist. In July 1998, Filnor again asked Lavery for assistance in terminating the lease, and Lavery agreed to assist. On approximately July 7, 1998, Filnor brought the car to Lavery. On July 10, 1997, Lavery solicited defendant-appellant John Conny to test-drive the vehicle. Defendant-appellant, one of Lavery's good customers, was permitted to take the car without a salesperson for an unspecified length of time. That night, defendant-appellant drove the vehicle left of center on State Route 183 in Washington Township, colliding with the vehicle driven by plaintiff-appellee George Moser.
 {¶ 3} In June 1999, Moser filed a complaint against defendant-appellant, Lavery, and Nationwide Insurance Company, who was Moser's insurer. The complaint was later amended to add as defendants Filnor and two other insurance companies with whom Moser claimed to be insured. State Farm, who was Filnor's insurer, filed an intervening complaint for a declaratory judgment on three grounds. First, State Farm alleged that Filnor relinquished all insurable interest on the day Filnor surrendered the vehicle to Lavery and thus the policy terminated on that day. Second, State Farm contended that defendant-appellant was not a permissive user. Third, State Farm argued that the policy specifically excluded coverage for any vehicle being operated in the course of a car business and that the vehicle in question was operating under this exclusion.
 {¶ 4} On April 27, 2001, defendant-appellant filed a motion for summary judgment on State Farm's complaint. He responded with the following arguments: the lease was still in effect, and thus, Filnor still had an insurable interest; he was driving as a permittee of a permittee; and he was not engaged in a car business. On May 8, 2001, the court denied various motions for summary judgment on these issues that had been filed by defendant-appellant, Nationwide, and others. The court found that Lavery became the owner for insurance purposes when Filnor dropped off the car. Thus, the court granted summary judgment in favor of State Farm with regards to State Farm's first argument and found State Farm's two remaining arguments moot. The court noted that not all issues in the case had been resolved.
 {¶ 5} On June 25, 2002, the court filed a judgment entry which again denied defendant-appellant's motion for summary judgment, referring to the reasons set forth in its May 8 judgment entry. The court added to this June 25 entry that there is no just reason to delay an appeal of the order. On July 10, 2001, defendant-appellant filed notice of appeal. Defendant-appellant's only claim on appeal is that the court improperly denied his motion for summary judgment and instead granted summary judgment for State Farm. It appears that all issues but this one have been settled.
 ASSIGNMENT OF ERROR {¶ 6} Appellant's sole assignment of error provides:
 {¶ 7} "The trial court erred as a matter of law in denying appellant's motion for summary judgment and in finding that appellant was not an insured under the State Farm policy entitled to coverage for the subject accident."
 {¶ 8} This assignment of error is divided into the three alternative theories originally set forth by State Farm in its complaint for a declaratory judgment. The first sub-issue, which was the only one addressed by the trial court, asks: "At the time of the accident did Filnor (State Farm's insured) have an insurable interest in the Corvette?"
 {¶ 9} Filnor's lease agreement with National City Bank as the lessor provides that the lessee has no right to assign or sublease any rights or interests under the lease without the lessor's permission. The lease discloses the method and fees involved in early termination of a lease. The lease notes that the vehicle shall be returned to the lessor unless the purchase option is exercised. Here, National City Bank did not receive payment under the purchase option until mid-August 1998, one month after the alleged termination and accident, at which time Lavery provided the funds for the purchase.
 {¶ 10} The president of Lavery testified in a deposition that it was his intent to terminate the lease and relieve Filnor of all liability when he took possession of the car. He opined that he became the owner at that time. (We note it appears that his insurer had not reimbursed him for the value of the car as of the January 2000 deposition.) Nonetheless, he admitted that the president of Filnor agreed to reimburse Lavery for any losses sustained in the termination of the lease, but he claimed that he would not have asked for such reimbursement.
 {¶ 11} State Farm, Filnor's insurer, contends that transfer of possession of the car resulted in the loss of an insurable interest by Filnor. Appellant alleges that mere transfer of possession by a lessee does not result in a sale, an assignment, or a sublease. Appellant also points out that this is not a bona fide purchaser situation since Lavery was a dealer who was familiar with the lease agreement.
 {¶ 12} We first note that R.C. 4505.04(A) provides that no person acquiring a motor vehicle from its owner shall acquire any right, title, claim or interest until a certificate of title has been issued to that person and that possession plus consideration is not sufficient. Pure questions of ownership are answered with reference to this certificate of title law, instead of the Uniform Commercial Code. Saturn of KingsAutomall, Inc. v. Mike Albert Lsg., Inc. (2001), 92 Ohio St.3d 513. As appellee points out, however, the Supreme Court has held that the U.C.C., rather than the certificate of title law, applies to determine the owner of a vehicle for purposes of risk of loss/insurance coverage. Smith v.Nationwide Mut. Ins. Co. (1988), 37 Ohio St.3d 150, 153. See, also,Saturn, 92 Ohio St.3d at 519 (noting that Smith is still good law for its specific purpose).
 {¶ 13} Nevertheless, Smith is distinguishable from the case at hand. Smith dealt with the application of Section 2 of the U.C.C., or Chapter 1302 of the Ohio Revised Code. Those laws pertain to the sale of goods. The case before us deals with Section 2A of the U.C.C., or Chapter 1310 of the Ohio Revised Code. These laws pertain to the lease of goods. See R.C. 1310.02(A) (defining the scope of the chapter). There are clear differences in how the sale laws and the lease laws treat the application of the certificate of title law.
 {¶ 14} A lease does not include a sale. R.C. 1310.01(A)(10). A finance lease exists where, as here, the lessor does not select, manufacture, or supply the goods, the lessor acquires the right to possession in connection with the lease, and the lessee agrees to certain contractual terms. R.C. 1310.01(A)(7). The risk of loss passes to the lessee in a finance lease. R.C. 1310.26(A).
 {¶ 15} In Smith, there was a sale of a vehicle with title pending and a decision that risk of loss would be determined by the U.C.C. and thus at delivery. Here, we have an original lease which conformed to the statutes and which placed the risk of loss on the lessee as provided in R.C. 1310.26. We then have a subsequent action by the lessee which places the risk of loss in question.
 {¶ 16} It is important to realize that Chapter 1310 was enacted after the Smith decision. R.C. 1310.02(B)(1), specifically provides that a lease is subject to Chapter 4505 and any applicable certificate of title statutes of another jurisdiction. Moreover, R.C. 1310.33(A) which is entitled, "Sale or Sublease of Goods by Lessee," states that the buyer or sublessee only obtains the interest in the goods that the lessee had power to transfer. Furthermore, R.C. 1310.33(C), provides:
 {¶ 17} "A buyer or sublessee from the lessee of goods that aresubject to an existing lease contract and are covered by a certificate oftitle issued under Chapter 1548., 4505., or 4585. of the Revised Code or a similar law of another jurisdiction takes no greater rights than thoseprovided by both this section and by the certificate of title law." (Emphasis added.)
 {¶ 18} National City Bank was the owner/lessor at the time of the accident. The mere fact that Lavery decided it would help its customer out by attempting to sell or lease the car that was still under an existing lease does not make Lavery the owner where the certificate of title was not transferred. In fact, the process was not even begun, and National City Bank was not even consulted let alone paid off. Filnor remained the lessee at the time of the accident. Thus, the trial court erred in applying U.C.C. law that dealt with sales rather than leases.
 {¶ 19} The court also erred in its statement regarding the nonassignment clause of the lease. The trial court found that this was a consumer lease which can only be made nonassignable through a conspicuous clause. The court then stated that the clause in the lease before us is not conspicuous. See R.C. 1310.31(G) (which states that in a consumer lease, to prohibit transfer of an interest, the language shall be specific, written, and conspicuous).
 {¶ 20} A consumer lease is a type of finance lease where the lessor who is regularly engaged in the business of leasing makes a lease to a lessee who is an individual and who takes under the lease primarily for a personal, family, or household purpose. R.C. 1310.01(A)(5). However, in this case, one of the lessees was a corporation. Filnor, Inc.'s name was placed in the line of the lease which was specifically described as "business and commercial." This lease cannot be considered primarily for personal, family, or household purposes just because it was a Corvette used by the co-lessee/owner of the company rather than a utility truck. As such, the lease does not fit the definition of a consumer lease. In the case of a finance lease that is not a consumer lease, the lease is effective against third parties and is not subject to modification or termination without the consent of the party to whom the promises run. R.C. 1310.46(A) and (B). The language of R.C. 1310.31(G) would thus be inapplicable, and the language in the lease would have sufficiently prohibited an assignment.
 {¶ 21} As previously mentioned, the trial court erroneously applied Chapter 1302 dealing with sales. The appropriate law is found in Chapter 1310 which is specifically applicable and expressly deals with scenarios where a lessee attempts to sell or sublease its interest in the lease. Under R.C. 1310.25(E), the parties may determine by agreement which party shall have an obligation to obtain insurance. Here, the lessee was required to carry insurance on the vehicle.
 {¶ 22} The contract and the law, rather than the intent of the lessee and some third party, are determinative here. Still, as to intent, we note that although the Lavery representative claimed that Lavery's intent was to became the owner of the car, this person also admitted that Filnor agreed to reimburse Lavery for any loss, which establishes more of a consignment-like situation than that of a sale.
 {¶ 23} In conclusion, the lessee dropped off a leased vehicle at a dealership with hope the lease would be terminated one and a half years early. The lessee did not receive a different car and did not ask their insurer to cancel coverage. The lessee remained liable to the lessor/bank for payments. A pay off was not tendered to the bank by Lavery until one month after the accident. No paperwork was completed; no signatures were sought. The bank was not even notified of the situation. Finally, the certificate of title was not transferred.
 {¶ 24} State Farm, as the lessee's insurer, was not entitled to summary judgment on its argument that the lessee no longer had an insurable interest in the vehicle. Rather, appellant was entitled to summary judgment on its argument that State Farm's policy did not cease on the date that Filnor left its leased car with Lavery. In accordance, this sub-issue is sustained, and the trial court's judgment is reversed.
 {¶ 25} This leaves the last two sub-issues presented by appellant under this assignment of error. The second sub-issue asks: "Was Appellant an insured under the State Farm policy as a permittee of a permittee of Filnor?" This sub-issue also contends that State Farm's argument about exceeded scope of permission is incorrect because the test is use, not manner of use. The third sub-issue queries: "Was coverage for appellant excluded by the terms of the State Farm policy which excluded coverage for an insured `engaged in the course of a car business'?"
 {¶ 26} These sub-issues were also presented in the motion for summary judgment. However, they were not addressed below as the trial court found them to be moot under its resolution of the first sub-issue. As such, we shall leave the decision on these remaining sub-issues to the trial court on remand.
 {¶ 27} For the foregoing reasons, the decision of the trial court on the main issue is reversed and this case is remanded to make decisions concerning the other two issues.
Waite, P.J., and Donofrio, J., concur.